## Michael Rosenberg *v.* William P. Clyde and B. Frank Clyde, trading as Wm. P. Clyde & Co., Appellants.

*Principal and agent—Liability of agent—Disclosed principal.*

Where one deals with an agent who acts within the scope of his authority and reveals his principal, the latter ordinarily is alone liable for a breach of the contract.

Argued Oct. 8, 1896. Appeal, No. 58, Nov. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1895, No. 790, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass against agents of common carrier for goods lost in transit. Before GORDON, J.

The statement sets out that on September 16, 1895, plaintiff delivered to defendants to be carried by water for hire from New York to Philadelphia certain goods and chattels worth together $225; that defendants received the goods but, through negligence, did not deliver them; and that the goods were thus lost to plaintiff.

The evidence tended to show that defendants received the goods as agents for " Clyde's Phila. and New York line." The receipt being signed by them as general agents. The plea was "not guilty." A motion for nonsuit was refused.

The court charged the jury, inter alia, as follows:

### CHARGE OF THE COURT.

Gentlemen of the jury: [I have been asked by the defendant to give you binding instructions as to a large part of this claim that there is no liability upon the part of the defendant for this alleged loss. I decline to give you that instruction.] [1]   [The paper, the bill of lading, given to this woman, was not a contract, so far as the evidence in this case goes, because it is the very essence of a contract that the parties shall know what they are doing, and shall assent and agree to the terms or covenants set up to bind them.] [3]

[The evidence in this case is that she delivered her goods to an expressman, and went with him to the wharf of the defendant company, who are common carriers; that she there delivered her goods to their charge, and they received them and then gave her a paper, which was a receipt for the goods, but which also contained certain other conditions which are now set up as a contract against her recovery. Well, gentlemen of the jury, her assent is not to be inferred upon her mere receipt of a paper as to the contents of which she was not advised before she delivered the goods, and which in its primary and conspicuous traits was simply a receipt—a bill of lading. There is no evidence in this case whatever that she knew beforehand, or was advised in any respect, of the contents now set up to defeat her claim.] [4]   For instance, we are informed that there is written across this paper, "Owner's risk," and upon that I have been asked to say to you that the defendant assumed no risk. I decline to so instruct you.   [The fact that they gave such a paper and that she received it is not an assent by her to that condition.] [5]   It also appears that there is a very reasonable condition in this bill of lading, that is to say, it would not be responsible under any circumstances for statuary, jewelry, gold, silver or other things of that precious character, and usually of small bulk, unless they are advised beforehand of the character of such articles and a description of them is given, together with an estimate of their value.

Well, gentlemen of the jury, if that had been a condition which she had been advised of, or if she had secreted any facts as to the contents of the packages which she delivered, it might very well be set up here, but as I have said as to her paper, the evidence shows that she had no knowledge whatever of what it

contained.  It was simply given to her after they had received the goods and taken them into their custody for shipment.

[It also appears that there is a condition in this bill of lading that if a receipt is afterwards given for the goods at the terminus where they are going, certifying that the goods are in good condition when received, there can be no recovery.  Well, gentlemen of the jury, the signing of a receipt for these goods, certifying that they were in good condition when received, is nothing more than prima facie evidence that they are in good condition, and does not, of itself, operate as an absolute proof of the fact that they were in good condition if in fact they were not.  The receipt is prima facie only, and in this case there is evidence that the goods were broken and that the plaintiff only received them, or took them away and signed this paper, upon the statement of the representative of the defendant company that she should sign the receipt and afterwards make any claim for the goods if they were not in good condition.] [6]

Moreover, I charge you, gentlemen of the jury, that a paper like this, given to a shipper, does not exempt the common carrier from liability for negligence.  That is a matter they are always liable for.  A contract of carriage implies the obligation to carry safely, so far as reasonable care and supervision of the carrying of goods or persons is concerned, and hence this contract would not relieve the defendant from the duty of carrying the goods safely without negligence.

[On the whole case I charge you, gentlemen of the jury, that this plaintiff is entitled to recover if you find the goods were lost by reason of the negligence of the Clyde Company in not taking proper care of the things during shipment and until they were delivered to the plaintiff.  If there was negligence in the carriage of the goods and the loss occurred as a result of that negligence, the plaintiff is entitled to recover.] [2]

Verdict for plaintiff for $100.  Defendant appealed.

*Errors assigned* were, (1–6) error in portions of the judge's charge, reciting same; (7) in not charging the jury that the bill of lading was a contract binding both upon the plaintiff and the carrier who received the goods ; (8) in not charging the jury that inasmuch as the plaintiff had not disclosed to the carrier that among the goods delivered to it for shipment were

certain pieces of silver, certain lace curtains, and certain pieces of silk and silk garments, the plaintiff could not recover for the value thereof; (9) in not charging the jury that there being no evidence that any demand in writing had been made for the damage alleged to have been suffered within ten days after delivery of the goods, plaintiff was debarred from maintaining his suit, and that therefore their verdict should be for the defendants.

*James Wilson Bayard*, with him *John G. Johnson*, for appellants.—The appellants being merely agents of the carrier are not liable for its negligence.

The bill of lading is a contract binding upon the plaintiff and he can only recover upon compliance with its terms: Porter on Bills of Lading, sec. 150; Long v. Railroad Co., 50 N. Y. 76; Kirkland v. Dinsmore, 62 N. Y. 171; Germania Fire Ins. Co. v. Railroad Co., 72 N. Y. 90; Van Etten v. Newton, 134 N. Y. 143; Rathbone v. R. R. Co., 140 N. Y. 48.

*Clinton O. Mayer*, with him *Charles Goldsmith*, for appellee.

OPINION BY WICKHAM, J., November 9, 1896:

The plaintiff in this case delivered to "The Clyde S. S. Co.," at New York, certain household goods, to be transported to Philadelphia. The Clyde S. S. Co. is and was a corporation engaged in business as a common carrier. The bill of lading given the plaintiff, in effect, so states and sets forth that the goods were received by the corporation. It is signed by W. H. Copes, an agent or subagent of the carrier company, and in its heading describes D. D. C. Mink, as "General Freight Agent," and William P. Clyde & Co., the appellants here, as "General Agents" of the corporation.

The plaintiff alleged that some of his goods were lost and others injured in transit. Instead of suing the corporation with which, as his own evidence clearly showed, his contract was made, he selected as defendants William P. Clyde & Co. He might as well have sued Copes or Mink, the other agents mentioned in the bill of lading.

No authorities need be cited in support of the familiar rule of law, that where one deals with an agent who acts within the

scope of his authority and reveals his principal, the latter ordinarily is alone liable for a breach of the contract. Certainly the rule applies in its fullest sense in the present case, no fraud or other exceptional matter being offered or shown.

The learned judge of the court below erred in not directing the jury to find for the defendants. The first specification of error is therefore sustained. The others need not be considered.

Judgment reversed.